**UTL CORPORATION, Appellant,**

v.

**Charles MARCUS, Trustee, Appellee.**

**No. 19903.**

Court of Civil Appeals of Texas, Dallas.

Oct. 9, 1979.

Rehearing Denied Nov. 9, 1979.

Royal H. Brin, Jr., Strasburger & Price, Dallas, for appellant.

A. Joe Fish, McKenzie & Baer, Dallas, for appellee.

Before AKIN, ROBERTSON and CARVER, JJ.

Carver, Justice.

UTL Corporation appeals from a judgment rendered in favor of Charles Marcus, Trustee, for breach of a real estate contract. The trial court awarded damages to Marcus. We reverse and render on the ground that the evidence failed to show the existence of a real estate contract meeting our statute of frauds.

In November, 1975, UTL signed a letter prepared by the Henry S. Miller Company, listing the UTL Corporation building in Dallas for sale, lease-back by UTL, and a re-purchase option to UTL. The two and a quarter page letter concluded with the following language:

> UTL further acknowledges that the Henry S. Miller Company shall act in the capacity of a real estate broker and in the event that a purchaser is not obtained and the transaction is not closed by December 30, 1975, then neither UTL nor the Henry S. Miller Company will have any responsibility or liability one to the other.

> This Contract of Sale covering this transaction will be subject to the approval of the holder of the first mortgage.

Miller advertised this listing and attracted Marcus as a prospective buyer. Miller's attorney then prepared a formal contract which Marcus signed as "Purchaser", Miller signed as "Principal Agent", and Marcus also signed as "Co-Operating Agent". This instrument was not signed by Marcus until January 8, 1976. UTL did not sign the January 8 instrument but instead submitted the instrument to its attorneys who objected to many parts of the instrument and produced a new draft dated February 2. No party signed the February 2 instrument although UTL's president wrote a letter to Miller stating that UTL would execute the February 2 instrument if certain modifications were made. The proposed modifications were unacceptable to Marcus who then filed this suit for damages.

The main issue presented to this court is the existence of a contract between the parties which satisfies the statute of frauds. Tex.Bus. & Comm.Code Ann. § 26.01 (Vernon 1968) provides in pertinent part:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> (1) in writing; and
>
> (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to . . .

(4) a contract for the sale of real estate;

The continuity in our law of this principle, as well as the essence thereof, has been expressed by our Supreme Court in *Rankin v. Naftalis,* 557 S.W.2d 940, 943 (Tex.1977). As the court said: "The Texas Legislature on successive occasions from the early days of the Republic has expressed its intent that contracts concerning land must not, as Lord Coke expressed it, 'be left to slippery memory' but must be reduced to writing." Marcus sought to show a written contract by (1) treating the listing letter between UTL and Miller as constituting Miller a general agent with power of sale so that Miller's signature on the January 8 instrument became UTL's signature; (2) treating the listing letter between UTL and Miller as an offer which was accepted by Marcus in writing through his January 8 instrument; (3) Marcus was the third party beneficiary of the listing contract between UTL and Miller; and (4) the February 2 instrument was agreed to in writing by UTL through its president's letter. Marcus further urges that the conduct of UTL estops it from claiming the benefits of the statute of frauds. The trial court sustained Marcus' position on each of these points.

■ We reject Marcus' claim and the finding of the trial court that Miller was constituted UTL's general agent with power of sale by the listing letter. No word or words of general agency appear in the listing letter. Rather, words creating a special agency, "real estate broker", do appear in the agreement. The broker is a special agent limited to showing the property and finding a purchaser. As a general rule, a broker does not have the authority to consummate a contract on behalf of his principal. *Loma Vista Development Co. v. Johnson,* 142 Tex. 686, 180 S.W.2d 922 (1944); *Goode v. Westside Developers, Inc.,* 258 S.W.2d 844 (Tex.Civ.App.—Waco 1953, writ ref'd n. r. e.). Further, Miller did not purport to sign Marcus' January 8 instrument in any capacity other than as broker. The January 8 instrument does not purport to be signed by Seller, shown to be UTL Corporation, acting through Miller or any other person. We hold that Miller was not a general agent with power to contract for UTL and that it never attempted to act as such an agent.

■ We also reject Marcus' claim that the listing agreement constituted a written offer and that the January 8 instrument constituted his written acceptance. The listing letter, if found to be an offer, would have to be accepted without variations or additions. *Garcia v. Vilarreal,* 478 S.W.2d 830 (Tex.Civ.App.—Corpus Christi 1971, no writ); *Smulcer v. Rogers,* 256 S.W.2d 120 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.). The listing letter is barely two and a quarter pages long while Marcus' January 8 instrument is thirty-eight pages including exhibits. The variations or additions noted are (1) the inclusion of personalty in the sale, (2) the addition of escrow deposits, (3) the total price is allocated between land and buildings, (4) detailing the essential terms of a note and of a lease and (5) the conditions of closing by December 30 plus approval by UTL's mortgagee are omitted. These variations and additions together with those implicit in a comparison of the two instruments make Marcus' January 8 instrument a *counteroffer* instead of an acceptance. *United Concrete Corp. v. Spin Line Co.,* 430 S.W.2d 360 (Tex.1968). Our view is confirmed by Marcus who chose to require in the January 8 instrument:

> 22. Because time is of the essence, it will be necessary for *Seller to accept Purchaser's offer herein contained* within one (1) week by signing and returning two (2) signed copies of this contract or the offer herein contained is withdrawn, voided and terminated by Purchaser and is of no further force and effect, and the earnest money, if any, shall be immediately returned to Purchaser. [Emphasis added]

We hold that there is no proof that UTL ever accepted this counteroffer in writing as required by our statute of frauds. *Hill v. Rich,* 522 S.W.2d 597 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.); *Mann v.*

*Risinger,* 423 S.W.2d 626 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.).

■ Additionally, we reject Marcus' contention that the letter listing agreement between UTL and Miller was a third party beneficiary contract for Marcus' benefit. Marcus had the burden to show that the parties to the listing letter actually intended him to be the beneficiary at the time it was signed. *Taggart v. Crews,* 521 S.W.2d 703 (Tex.Civ.App.—San Antonio 1975, no writ). There was no word in the listing agreement that can be said to refer to Marcus and no evidence was offered by Marcus that would support a finding that he was the intended beneficiary. Any prospective buyer located by Miller under the listing letter might be an *incidental* beneficiary of the listing but would not qualify as a third party beneficiary entitled to enforce the listing letter. *Suthers v. Booker Hospital District,* 543 S.W.2d 723 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.). We hold that Marcus has failed to show himself to be the intended third party beneficiary of the listing letter between UTL and Miller. Hence, Marcus may not rely upon the listing as a contract satisfying our statute of frauds.

■ We also reject Marcus' contention that the unsigned February 2 instrument, when read with the letter of the UTL president, constituted a contract satisfying our statute of frauds. After the instrument of February 2 was prepared, but unsigned by anyone, the president of UTL wrote Miller on February 25:

> This letter is to advise you that UTL Corporation will execute the enclosed sale lease-back agreements covering its property at 4500 West Mockingbird Lane, Dallas, Texas, after the following modifications have been made to said agreements:
> 1. Repurchase option to be between second (2nd) and fourth (4th) year at a price of $1,220,000.
> 2. Real estate commissions are to be payable as follows:
> (a) $18,000 at closing; and
> (b) $10,000 per year for three (3) years.

> If you have any questions regarding the above, please contact Mr. John Benson.

Marcus testified he was unwilling to accept the terms of the letter on which he now relies. The modification demanded made the letter a counteroffer, which Marcus rejected. We hold that the unsigned February 2 instrument was not unconditionally accepted in writing by UTL's letter so as constitutes a contract complying with our statute of frauds.

■ Marcus also urges that even if we find there was no contract satisfying the statute of frauds, nevertheless, under the theory of "promissory estoppel", UTL is deprived of reliance upon the statute as a defense because UTL *promised* to sign the February 2 instrument and Marcus relied upon that promise to his detriment. Marcus' difficulty in resting on this theory lies in the fact that the "promise" of UTL, is set out in the above quoted letter, and is inseparable from the conditions stated. Marcus testified that the conditions were unacceptable to him which led to his *rejection* instead of his *reliance* on the letter. Our supreme court in *Wheeler v. White,* 398 S.W.2d 93, 96 (Tex.1965), stated:

> Where one party has by his words or conduct made to the other a promise or assurance which was intended to affect the legal relations between them and to be acted on accordingly, then, *once the other party has taken him at his word and acted on it,* the party who gave the promise cannot afterward be allowed to revert to the previous relationship as if no such promise had been made.
>
> [Emphasis added.]

According to our record, UTL stood ready to abide by the promise as stated in its letter and Marcus has shown no breach of that promise. We hold that UTL has not breached any promise or assurance given Marcus and is not estopped to urge the statute of frauds as a defense to Marcus' claim.

Accordingly, the judgment of the trial court is reversed and judgment here rendered that Charles Marcus, Trustee, take nothing from UTL.