**XARIN REAL ESTATE, INC., et al., Appellants,**

v.

**Dr. & Mrs. Jose GAMBOA, et al., Appellees.**

**No. 13–85–296–CV.**

Court of Appeals of Texas, Corpus Christi.

June 26, 1986.

Rehearing Denied Aug. 29, 1986.

Gary Pinnell, Wayne Scott, James M. Heidelberg, Les Mendelsohn, San Antonio, for appellants.

Emerson Banack, Jr., Michael R. Garatoni, Dale Wilson, Foster, Lewis Law Firm, James M. Pearl, San Antonio, for appellees.

Before NYE, C.J., and DORSEY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This appeal involves the construction of the Texas Real Estate License Act[1]. The jury found that plaintiffs Larry Baker and Empire Real Estate, Inc. (hereinafter Baker) and Dr. and Mrs. Jose Gamboa (hereinafter Gamboas) had been damaged by the actions of appellant Xarin Real Estate, Inc. (hereinafter Xarin) in the amount of $232,000.00 and $25,000.00, respectively. In its judgment, the trial court trebled the Gamboas' amount and doubled Baker's under Section 19(b) of the Act. Additionally, the jury found that Baker's action against the Gamboas was brought in bad faith and

---

1. TEX.REV.CIV.STAT.ANN. art. 6573a (Vernon Supp.1986).

awarded the Gamboas attorney's fees against Baker for $67,500.00 plus additional attorney's fees in the amount of $25,000.00 for appeal. We reverse and render.

The primary focus of this litigation concerns the Harmony Hills apartment complex located in San Antonio, Texas. In 1978, the owners of the apartment complex, Dr. and Mrs. Gamboa, were contacted by Elaine Watkins, a licensed Texas realtor, concerning the possibility of selling the 87-unit complex. Ms. Watkins subsequently contacted Xarin as a potential purchaser of the property. On February 13, 1979, the Gamboas and Xarin entered into an earnest money contract for the sale/purchase of the apartment complex for $1,400,000.00. The contract stated that the purchaser was to be "Xarin Real Estate, Inc., or nominee." The contract also stated that Xarin was a licensed real estate broker in Texas, which was not true. Prior to the execution of the contract between Xarin and the Gamboas, Xarin's representative in San Antonio, Ray Smith, had been in contact with Roger Thiret. Mr. Thiret was a real estate broker who sought out properties for Larry Baker throughout the country for conversion into condominium units. One of the potential projects discussed by Smith and Thiret was the Harmony Hills project.

On February 15, Baker came to San Antonio and viewed the Harmony Hills Apartments with Smith. Baker decided to purchase them, but Smith informed him that the project was under contract to Xarin but that Xarin would assign to him its rights under the contract for $232,000.00. An agreement was reached between Baker and Xarin, and the earnest money contract between Xarin and the Gamboas was assigned to Baker. Subsequently, the contract with the Gamboas was closed, Baker paid Xarin $232,000.00, and Baker created Empire Real Estate Company and conveyed title to the property to that corporation. Baker was the sole shareholder of Empire Real Estate Company.

**2.** Texas Deceptive Trade Practices-Consumer Protection Act, TEX.BUS. & COM.CODE ANN.

A dispute arose concerning the amount of square footage contained in the apartment units, and Baker sued Xarin, the Gamboas, and other parties not here relevant, on theories of fraud, deceptive trade practices, breach of contract, and breach of warranty. Baker also sued Xarin for not being licensed as a real estate broker in Texas. The Gamboas cross-claimed against Xarin, and Xarin counter-claimed against Baker. The jury trial primarily involved the purported misrepresentations of the square footage, but judgment was rendered against Xarin only for its violation of the Real Estate License Act. The judgment also ordered Baker to pay the Gamboas' attorney's fees, pursuant to the jury's finding that Baker's DTPA[2] cause of action against them was brought in bad faith or for the purpose of harassment.

While the various parties raise numerous points of error, the initial question which we must resolve concerns construction of the Texas Real Estate License Act. It is appellant Xarin's position that, for a variety of reasons, it was not subject to the provisions of the Act; therefore, the findings by the jury that it had violated the Act were, as a matter of law, incorrect.

The following portions of the Texas Real Estate License Act are relevant:

Section 1. (b) of the Act provides:

It is unlawful for a person to act in the capacity of, engage in the business of, or advertise or hold himself out as engaging in or conducting the business of a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the Texas Real Estate Commission. It is unlawful for a person licensed as a real estate salesman to act or attempt to act as a real estate agent unless he is, at such time, associated with a licensed Texas real estate broker and acting for the licensed real estate broker.

Section 2(2) of the Act provides:

§§ 17.41–.63 (Vernon Supp.1986).

"Real estate broker" means a person who, *for another person* and for a fee, commission, or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other valuable consideration from another person (emphasis added):

(A) sells, exchanges, purchases, rents, or leases real estate;

(B) offers to sell, exchange, purchase, rent, or lease real estate;

(C) negotiates or attempts to negotiate the listing, sale, exchange, purchase, rental, or leasing of real estate;

(D) lists or offers or attempts or agrees to list real estate for sale, rental, lease, exchange, or trade;

(E) appraises or offers or attempts or agrees to appraise real estate;

(F) auctions, or offers or attempts or agrees to auction, real estate;

(G) buys or sells or offers to buy or sell, or otherwise deals in options on real estate;

(H) aids, attempts, or offers to aid in locating or obtaining for purchase, rent, or lease any real estate;

(I) procures or assists in the procuring of prospects for the purpose of effecting the sale, exchange, lease, or rental of real estate;

(J) procures or assists in the procuring of properties for the purpose of effecting the sale, exchange, lease, or rental of real estate.

Section 2(3) of the Act provides:

"Broker" also includes a person *employed by or on behalf of the owner or owners* of lots or other parcels of real estate, at a salary, fee, commission, or any other valuable consideration, to sell the real estate or any part thereof, in lots or parcels or other disposition thereof. It also includes a person who engages in the business of charging an advance fee or contracting for collection of a fee in connection with a contract whereby he undertakes primarily to promote the sale of real estate either through its listing in a publication issued primarily for such purpose, or for referral of information concerning the real estate to brokers, or both. (Emphasis added.)

Section 2(5) of the Act defines a "person" as "an individual, a partnership, or a corporation, foreign or domestic."

Section 4 of the Act provides:

A person who, *directly or indirectly for another*, with the intention or on the promise of receiving any valuable consideration, offers, attempts, or agrees to perform, or performs a single act defined in Subdivisions 2 and 3, Section 2 of this Act, whether as a part of a transaction, or as an entire transaction, is deemed to be acting as a real estate broker or salesman within the meaning of this Act. The commission of a single such act by a person required to be licensed under this Act and not so licensed shall constitute a violation of this Act. (Emphasis added.)

Section 19(a) of the Act provides:

A person acting as a real estate broker or real estate salesman without first obtaining a license is guilty of a misdemeanor and on conviction shall be punishable by a fine of not less than $100 nor more than $500, or by imprisonment in the county jail for a term not to exceed one year, or both; and if a corporation, shall be punishable by a fine of not less than $1,000, nor more than $2,000. A person, on conviction of a second or subsequent offense, shall be punishable by a fine of not less than $500 nor more than $1,000, or by imprisonment for a term not to exceed two years, or both; and if a corporation, shall be punishable by a fine of not less than $2,000 nor more than $5,000.

Section 19(b) provides:

In case a person received money, or the equivalent thereof, as a fee, commission, compensation, or profit by or in consequence of a violation of Subsection (a) of this section, he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three times the sum so received, as may be determined by the

court, which penalty may be recovered in a court of competent jurisdiction by an aggrieved person.

The jury found that Xarin acted as a real estate broker in connection with both the Gamboas' sale of the apartment complex and Baker's subsequent purchase of the property. By its fifth through eighth and thirteenth through fifteenth points of error, Xarin challenges the legal and factual sufficiency of the evidence supporting these findings. By its first point of error, Xarin contends it was exempt from the Act *solely* because it acted as an owner when it sold its interest in the apartments to Baker. Xarin's contention that is the basis of all of these points is that in order for it to be a real estate broker under the Act, and in accord with the jury's finding, it is necessary that Xarin "act for another"; that absent evidence that Xarin "acted for another," it could not be found to have acted as a broker under the Act.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ A real estate broker is usually understood to be one who is engaged by others on a commission basis to negotiate contracts involving real estate. *See generally Janes v. CPR Corp.*, 623 S.W.2d 733, 740 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *UTL Corp. v. Marcus*, 589 S.W.2d 782, 784 (Tex.Civ.App.—Dallas 1979, no writ); *Doria v. Suchowolski*, 531 S.W.2d 360, 365 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Section 2(2) of the Act defines a real estate broker as someone who acts "for another person." Section 2(3) provides that a broker is someone who is "employed by or on behalf of the owner" of real estate. Section 4 defines a broker as a person acting "for another." We hold that it is necessary that one act for another before he can be held to be a broker under the Act.

■ The next inquiry is whether the evidence is sufficient, factually or legally, to show that Xarin acted for another in order to uphold the verdict that Xarin was a broker under the Act. We will therefore review the evidence to determine for whom Xarin was acting. We find no evidence that Xarin acted in any capacity for the Gamboas. The Gamboas retained Elaine Watkins as their agent to sell their property, and Xarin was shown on the sales contract to be only the purchaser and was not shown in any agency capacity. Although Xarin ultimately received half of the $50,000 commission the Gamboas paid Watkins, the transfer from Watkins to Xarin cannot be characterized as a commission. The Gamboas did not hire Xarin nor pay Xarin any money. Rather, Watkins was simply making the deal more attractive to a potential purchaser when she agreed to give Xarin $25,000 out of the money she would earn as her fee.

■ There is also no evidence that Xarin acted for Baker when Xarin acquired its interest in the property from the Gamboas. Generally, to establish that one person has acted for another in a normal agency relationship, there must be an agreement between the two persons, and one must exercise some control over the other. *See Stanford v. Dairy Queen Products*, 623 S.W.2d 797, 800–801 (Tex.App.—Austin 1981, writ ref'd n.r.e.). The jury found that Xarin did not know that Baker was interested in acquiring the property when Xarin entered into the real estate sales contract. Thus, neither of these elements existed between Baker and Xarin at the time Xarin acquired its interest, which indicates that Xarin was not acting "for" Baker at that time.

■ Nor did Xarin act for Baker after Xarin acquired rights in the property under the earnest money contract. Xarin, in its first point of error, argues that its sale to

Baker was exempt from the Act, *solely* because Xarin acted as an *owner* of realty. Although we disagree with this argument,[3] we agree that no evidence exists to show Xarin was acting for anyone but itself when it sold its interest to Baker.

There being no evidence that Xarin acted for someone else, there is no evidence to support the jury's findings that Xarin acted as a broker for either the Gamboas or Baker. Accordingly, we sustain Xarin's fifth through eighth and thirteenth through fifteenth points of error. That portion of the judgment awarding damages to the Gamboas and to Baker is reversed and rendered that they recover nothing from Xarin.

Xarin's points of error nine through twelve claim that Baker's suit was barred by limitations. The final payment from Baker to Xarin was made in October of 1979. Suit was not filed until March of 1982. Xarin pled and argues on appeal that Baker's suit was barred by the two-year statute of limitations, TEX.REV.CIV. STAT.ANN. art. 5526 (repealed 1985).[4] Baker contends the four-year statute of limitations applies, TEX.REV.CIV.STAT. ANN. art. 5527 (repealed 1985).[5] We agree that the four-year statute applies.

■ Under former Article 5527 (as amended effective August 27, 1978) and new Section 16.004 of the Civil Practice and Remedies Code, actions for "debt" must be brought within four years after the cause of action accrues. The phrase found in former Article 5527, "actions for debt," has been liberally construed to embrace actions for money damages for breach of a written contract. *See Brooks Fashion Stores Inc. v. Northpark National Bank,* 689 S.W.2d 937, 941 (Tex.App.—Dallas 1985, no writ) (and citations therein). Baker's suit against Xarin was principally one founded upon the written earnest money contract between the Gamboas and Xarin and the written assignment of that contract from Xarin to Baker. "Since an action for damages caused by breach of contract is an 'action for debt,' it is not barred by limitations until four years after the cause of action accrued." *Id.* at 942. Because Baker's DTPA claim is not before us on appeal, we do not decide whether it was barred by limitations under TEX.BUS. & COM.CODE ANN. § 17.56A (Vernon Supp.1986). We overrule Xarin's ninth through twelfth points of error.

■ Xarin's twenty-first and twenty-second points of error complain of the trial court's awarding Baker attorney's fees in the amount of $100,000.00. It is undisputed that the only basis in the jury's response to the special issues for the recovery of attorney's fees would have to come from the jury's findings that Xarin violated the Real Estate License Act. Since we have held that there is no evidence from which the jury could have found that Xarin was a broker under the Real Estate License Act, Xarin did not violate the Act. Therefore, recovery of attorney's fees predicated upon violation of the Act was improper. Xarin's points of error twenty-one and twenty-two are sustained, and that portion of the judgment awarding Baker attorney's fees from

---

**3.** Former Section 6(4) of the Act once exempted owners who sold, leased, or transferred their property. Section 3 now lists the exemptions, and Subsection (i) only exempts owners who rent or lease their land. Thus, where an owner sells his own land and *also* fits the Act's definition of broker (i.e., by acting "for another"), the owner would be required to be licensed. This might occur, for example, where one co-tenant negotiates and sells not only his interest in property but that of other co-tenants as well. Baker testified that he thought Ray Smith, Xarin's employee, "was to be an agent for me in looking for" various properties, including the Harmony Hills apartments. This was before Baker learned that Xarin already had the rights to sole ownership of Harmony Hills. We hold that this comment is no evidence of agency. As a matter of law, someone who sells only his ownership rights in property to another cannot be said to be "acting for" the buyer. We overrule Xarin's first point of error but note that Xarin acted solely for itself when it transferred its interest in the apartments to Baker, and therefore was not governed by the Act.

**4.** Now codified at TEX.CIV.PRAC. & REMS. CODE ANN. § 16.003 (Vernon 1986).

**5.** Now codified at TEX.CIV.PRAC. & REMS. CODE ANN. § 16.004 (Vernon 1986).

Xarin is reversed and rendered that Baker take nothing thereby.

Because of our disposition of Xarin's above points of error, we need not address Xarin's second through fourth, sixteenth through twentieth, and twenty-third through twenty-ninth points of error. TEX.R.CIV.P. 451.

Baker raises four cross-points of error concerning the trial court's award of attorney's fees to the Gamboas for Baker's allegedly groundless and bad-faith DTPA suit against them. In the instant case, all acts giving rise to a cause of action occurred in 1979, prior to the effective date of the amendment of the section of the Texas Deceptive Trade Practices Act in question. Therefore, the pre-amendment wording of the DTPA is applicable to this case. Before the 1979 amendment, TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp.1986) stated:

> On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment the court may award to the defendant reasonable attorney's fees in relation to the amount of work expended and court costs.

The courts interpreting this language have reached a concensus that the issue of groundlessness is a law question to be determined by the court, while the question of bad faith and harassment are issues for the jury. *Computer Business Services, Inc. v. West,* 627 S.W.2d 759 (Tex.App.—Tyler 1981, writ ref'd n.r.e.); *Brunstetter v. Southern,* 619 S.W.2d 557 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.); *Genico Distributors, Inc. v. First National Bank,* 616 S.W.2d 418 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *O'Shea v. International Business Machines Corp.,* 578 S.W.2d 844 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).[6] The jury found that Baker's DTPA lawsuit against the Gamboas was brought in bad faith or for the purposes of harassment,

and the trial court recites in its judgment that the lawsuit was groundless.

■ Baker's third cross-point of error alleges that the trial court erred in finding that Baker's DTPA claim against the Gamboas was groundless. In determining whether an action is groundless, the trial court makes its decision based either on undisputed fact issues, law issues or jury findings. *C.S.R., Inc. v. Industrial Mechanical, Inc.,* 698 S.W.2d 213, 217 (Tex. App.—Corpus Christi 1985, writ requested); *Mader v. Aetna Casualty and Surety Co.,* 683 S.W.2d 731, 734 (Tex.App.—Corpus Christi 1984, no writ). The term "groundless" means that there was no arguable basis for the cause of action. *C.S.R., Inc.,* 698 S.W.2d at 217; *LaChance v. McKown,* 649 S.W.2d 658 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.).

■ We disagree with the trial court's conclusion that, as a matter of law, Baker's claim against the Gamboas did not rest on an arguable legal basis. The record contains several writings by Elaine Watkins, the Gamboas' agent, apparently made on behalf of the Gamboas, which represented that the Harmony Hills Apartments contained several thousand more leasable square feet than they actually did. Xarin made these writings available to Baker during negotiations. Although Baker never directly contacted the Gamboas, they contracted to sell the apartments to Xarin "or nominee," indicating the possibility that someone other than Xarin might close the deal. Thus, at the time he filed suit, Baker knew only that he had purchased far less square footage from Xarin than he had been led to believe and that certain writings, made on behalf of the Gamboas prior to their sale of Harmony Hills to Xarin, misstated the total leasable square feet.

The record clearly establishes that Baker had a sound basis for his cause of action against the Gamboas based on the alleged misrepresentation by the Gamboas' agent

---

6. Whether this two-tiered analysis remains sound after the 1979 amendment is not clear. *See Schott v. Leissner,* 659 S.W.2d 752, 754 (Tex. App.—Corpus Christi 1983), writ ref'd n.r.e. with explanation, *Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984).

to Baker's predecessor in interest (Xarin) of the amount of square footage contained in the apartments. While Baker was unable to convince the jury of the merits of his claim, these facts still provided a solid basis for the initiation of the litigation in question. Baker's suit was not legally groundless merely because he did not win at trial. *See LaChance,* 649 S.W.2d at 661.

We sustain Baker's third cross-point and reverse the trial court's award of $92,-500.00 in attorney's fees to the Gamboas.

Because we sustain Baker's third cross-point of error, we do not reach his first and second points, which deal with the legal and factual sufficiency to support the jury's finding that Baker brought his action in bad faith or for the purposes of harassment. We also do not reach is fourth cross-point, which involves the amount of attorney's fees awarded to the Gamboas.

The portion of the trial court's judgment awarding Baker and the Gamboas recovery from Xarin under the Real Estate License Act, and the portion of the judgment awarding Baker attorney's fees against Xarin, are reversed and rendered that the Gamboas and Baker take nothing. The portion of the judgment awarding the Gamboas attorney's fees against Baker is reversed and rendered that the Gamboas take nothing.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority relies on a no-evidence conclusion in order to reverse and render the trial court's judgment. To this, I disagree.

For instance, the majority states that the pre-1979 TEX.BUS. & COM.CODE ANN. art. 17.50(c) test for groundless causes of action is a law question. Yet, they conclude that, since there is some factual basis that gave the plaintiff *an arguable basis* to bring his cause of action under the Texas Deceptive Trade Practices Act, the trial judge was in error in concluding that the cause of action was groundless as a matter of law. They point to some facts that they say could arguably be an excuse for bring-

ing the lawsuit; therefore, the trial court was in error in finding the plaintiffs' lawsuit was groundless as a matter of law.

Here, the jury found that Baker's Deceptive Trade Practices lawsuit against the Gamboas was brought in bad faith or for the purpose of harassment. The majority does not challenge the factual basis for the jury's findings. But the majority does incorrectly decide that "groundless" (as a fact question) means that there was no arguable basis for the cause of action in the first place. If this is what the legislature meant when it passed art. 17.50(c), then there would never be an award for attorney's fees under this portion of the act because there will always be an arguable basis for bringing the lawsuit.