**William R. GAMBLE and John C. Simmons; d/b/a Gamble, Simmons & Company, Appellants,**

v.

**James C. NORTON and Texas Real Estate Commission, Appellees.**

No. 01–94–00460–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 19, 1995.

---

G. Riley Hetherington, Katy, for appellants.

Dan Morales, Jorge Vega, Suzanne Formby Marshall and George Warner, Austin, Michael L. Landrum, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This case involves the issue of whether a party can recover from the Real Estate Recovery Fund (the Fund) [1] for acts committed by a real estate broker while the broker was acting as a manager and principal of an investment venture. We hold the Fund is not liable for damages in this case because the acts of the broker about which the plaintiff complains were committed by the broker in his role as investment manager and investor, not as a licensed real estate dealer. We affirm.

### Overview of Facts

James Norton, a real estate broker, sold, managed, and invested in three joint ventures. Two of the investors, William Gamble and John Simmons, d/b/a Gamble, Simmons & Company (collectively, GSC), sued Norton for misrepresentation and breach of fiduciary duty stemming from his actions on behalf of those ventures. After GSC was unable to collect on the $1.6 million judgment, it filed a post-judgment proceeding to recover under the Fund. After a hearing, the trial court held Norton did not act in his capacity as a real estate broker and GSC could not recover from the Fund.

---

1. TEX.REV.CIV.STAT. art. 6573a, § 8 (Vernon Supp.   1995)

GSC and Norton were partners in three joint ventures known as the Brazoria 328 Joint Venture, the Brazoria 17 Joint Venture, and the Spring Cypress Joint Venture.[2] The Brazoria 328 Joint Venture, purchased on August 13, 1975, owned 328 acres in Brazoria County. The Brazoria 17 Joint Venture, purchased on April 20, 1976, owned 17 acres in Brazoria County. The Spring Cypress Joint Venture, purchased on September 29, 1981, owned 42 acres of land in Harris County.

Norton testified that he acted as the managing partner for the joint ventures, marketing the properties for sale. The only joint venture agreement that stated Norton was the manager was the Spring Cypress Joint Venture. Norton, a licensed real estate broker, was to receive a commission not to exceed six percent in the event of a sale of either the Brazoria 17 or Brazoria 328 properties. The Spring Cypress Joint Venture stated that Norton, as manager, would receive 10 percent of the profits if the property sold.

Norton testified that his job included collecting money from the partners in the joint ventures and making payments on the debts owed. Norton testified that he was not paid for his work as a managing partner, but was to receive commissions upon the sale of the properties.

In the mid–1980s, when the real estate market crashed in Texas, the value of the properties in the joint ventures declined and more was owed on the properties than they were worth. The Spring Cypress Joint Venture was the only property that eventually sold. Norton testified that other partners began dropping out of the joint ventures when the market crashed. Norton, who had put title to the properties in his name, testified that he used the properties as collateral to obtain loans. Norton testified the loan money was used to make the payments on the debt on the properties.

GSC sued Norton for poorly managing the investments. After the court struck Norton's pleadings as a sanction for discovery

abuse, the court entered a default judgment for GSC in the amount of $1,624,041.97. After GSC was not able to collect, GSC filed a verified claim in the same court that had rendered judgment for it, seeking recovery from the Fund. As required by the Act, GSC notified Norton and the Texas Real Estate Commission (Commission) of the filing of the verified claim. After a hearing attended by all three parties, the trial court denied GSC's application for payment from the Fund. GSC appeals. Three parties filed briefs—GSC, Norton, and the Commission.

### Overview of the Fund

The Fund was established as part of the Real Estate License Act (the Act).[3] The purpose of the Act is to eliminate or reduce fraud on the public caused by unlicensed, unscrupulous, on unqualified persons dealing in real estate. *Henry S. Miller Co. v. Treo Enter.*, 585 S.W.2d 674, 675–76 (Tex.1979); *Gill v. Smith*, 233 S.W.2d 223, 227 (Tex. App.—Galveston 1950, writ ref'd n.r.e.) (originally called the "Real Estate Dealers Act"). Under the Act, a person who has an uncollectible judgment against a licensed real estate broker may file a verified claim in the court in which the judgment was rendered and, upon notice to the commission and the judgment debtor, apply for an order directing payment out of the Fund. Tex.Rev.Civ. Stat. art. 6573a, § 8(e); *Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 693 (Tex. 1989); *Josey v. Texas Real Estate Comm'n*, 801 S.W.2d 200, 201 (Tex.App.—Houston [1st Dist.] 1990, no writ). The trial court conducts a hearing on the application for reimbursement from the Fund. At the hearing, the claimant must show, among other things, that the underlying judgment is against a licensed real estate broker who caused the claimant's damages by an act that constituted a violation of Section 15(a)(3) or (6) of the Act. Tex.Rev.Civ.Stat. art. 6573a, § 8(a),(f); *Josey*, 801 S.W.2d at 201. The Commission is authorized to attend the hearing to protect the fund from spurious or unjust claims or to ensure compliance with the requirements for

---

2. There were several other partners, besides the parties in this litigation, involved in each of these joint ventures.

3. Tex.Rev.Civ.Stat. art. 6573a (Vernon Supp.1995)

recovery. TEX.REV.CIV.STAT. art. 6573a, § 8(k); *Nagle*, 767 S.W.2d at 693; *Josey*, 801 S.W.2d at 201.

## A.

### Norton's Standing

■ In point of error six, GSC contends the district court erred in allowing Norton to intervene in the case against the Fund.

GSC contends the real party in interest in connection with the application for recovery under the Fund is the Commission, not Norton. GSC also argues that, because Norton's pleadings were struck in the underlying cause of action, Norton has no legal or equitable interest in this litigation and should not have been permitted to intervene. Norton contends he had a right to be in the suit because if the court ordered the Fund to pay the claim, his license could be revoked, and he could not regain it without reimbursing the Fund for the claim. TEX.REV.CIV.STAT. art. 6573a, § 8(i) (Vernon Supp.1995). Norton also argues that the Act required that he be notified of an action for an award from the Fund. TEX.REV.CIV.STAT. art. 6573a, § 8(e). The Commission agrees with Norton, that he is a necessary party because the Act requires that he have notice of the proceedings.

The suit to recover from the Fund is not a distinct lawsuit separate from the underlying action against the broker. It is, as the Supreme Court described, a "post-judgment hearing" at which the Commission may appear to defend the Fund against the claim. *See Nagle*, 767 S.W.2d at 695. The Act presumes that the licensee is part of the suit and will participate in the post-judgment hearing. *See* TEX.REV.CIV.STAT. art. 6573a, § 8(e) (the licensee must be given notice of the hearing). If the court orders the Fund to reimburse the claimant, the licensee can challenge that decision on appeal. *See, e.g., Haney v. Texas Real Estate Comm'n*, 789 S.W.2d 304, 305 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (real estate licensee appealed the order directing payment from the Fund).

This issue in this case is not one of intervention; Norton was already in the suit. The issue is whether Norton could partici-pate in the post-judgment proceedings for reimbursement from the Fund after his pleadings were struck. The post-judgment procedure against the Fund is closely analogous to a post-judgment proceeding against a judgment debtor. When a claimant files for reimbursement under the Act, instead of filing against the judgment debtor, the claimant files against the Fund. The Legislature evidenced its desire to have the licensee participate in the proceedings against the Fund when it provided that the claimant must give the licensee notice of the claim.

We hold the licensee is a party who may participate in the claim against the Fund. The trial court did not abuse its discretion in permitting the licensee to participate at the hearing. We overrule point of error six. We now address the substance of the appeal.

## B.

### Sufficiency of the Evidence

In a number of related points of error, GSC argues that the evidence does not support the trial court's findings that Norton was acting as a managing partner and co-adventurer, not as a real estate agent. In points of error one and two, GSC challenges the factual and legal sufficiency of the evidence to support the district court's finding that Norton's acts were not those of a real estate agent or broker. In point of error three, GSC challenges the factual sufficiency of the evidence to support the district court's finding that Norton did not engage in misrepresentations or fraudulent acts when selling, buying, trading, or renting real property in his own name. In point of error four, GSC challenges the factual sufficiency of the district court's finding that Norton caused no damage to GCS. In point of error five, GSC challenges the factual sufficiency of the evidence to support the district court's finding that Norton caused damage to GSC while acting as a co-adventurer. We consider these points of error together.

### 1.

### Standard of Review

The trial court's findings of fact are controlling upon the reviewing court and will not

be disturbed as long as they are supported by probative evidence. *Ray v. Farmers' State Bank,* 576 S.W.2d 607, 609 (Tex.1979); *IFG Leasing Co. v. Ellis,* 748 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1988, no writ). We review the evidence to support the trial court's findings of fact by the same standards we use to review the evidence to support jury findings, that is, by applying the legal and factual sufficiency tests. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

■ When an appellant challenges the factual sufficiency of the evidence to support an adverse finding, we consider and weigh all the evidence, both that in support of and contrary to the challenged finding. In that review, we will uphold the finding unless we decide it is against the great weight and preponderance of the evidence so as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Pizzitola v. Galveston County,* 808 S.W.2d 244, 247 (Tex.App.—Houston [1st Dist.] 1991, no writ).

■ When an appellant challenges the legal sufficiency of the evidence to support an adverse finding, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Catalina,* 881 S.W.2d at 297; *Pizzitola,* 808 S.W.2d at 246–47. If there is any evidence of probative force (more than a scintilla) to support the finding, the point must be overruled and the finding upheld. *Catalina,* 881 S.W.2d at 297.

### The Findings & Conclusions

We summarize the district court's findings of fact:

(1) A judgment was rendered for GSC in the underlying cause and GSC has been unable to collect on it. Norton is a licensed real estate broker who lacks assets to satisfy the judgment.

(2) Norton acted as the managing partner in the joint venture agreements with GSC.

(3) Norton and GSC invested money and the investments were lost because of the declining real estate market.

(4) Norton acted as a real estate agent in some of his activities on behalf of the joint ventures.

(5) Norton caused no damage to GSC.

(6) The actions of Norton in the joint ventures were not committed by Norton when selling, buying, renting, or trading real property in his own name, or while performing as a real estate agent.

(7) Norton acted as a co-adventurer with GSC.

We summarize the court's conclusions of law:

(1) In his actions as a real estate broker, Norton did not cause damage to GSC.

(2) Norton did not engage in misrepresentations or dishonest or fraudulent action when selling, buying, or renting real property in his own name.

(3) GSC has not shown that the final judgment in the underlying cause against Norton is based on facts allowing recovery from the Fund and the Fund is not liable to pay.

GSC disagrees with the court's findings because, as it argues, Norton chose to put himself in the capacity as a real estate broker in the joint venture agreements he wrote. GSC also contends the express contractual provisions of the agreements state that Norton retained the right to sell the property in his capacity as a real estate broker. The Commission contends Norton acted as a principal or co-owner in the ventures. The Commission argues the parties agreed Norton could receive a commission on the sale of the venture property as compensation for his activities as the managing partner. The Commission also contends that under the Act a broker is defined as one who acts for another and since Norton acted as a principal, he was not a broker. Norton contends that even though he was to get a portion of the sale proceeds, he was not a broker.

### 2.

### Summary of the three joint ventures

The Brazoria 328 Joint Venture acquired 328 acres in Brazoria County for $901,005 in 1975. The joint venture agreement stated that:

*Section 1.05 Scope of Venturer's Authority.* [N]one of the Venturers shall have any authority to act for, or to assume any obligation or responsibility on behalf of, any other Venturer or the Joint Venture. The Venturers agree that they shall not enter into any contracts, agreements, leases, mortgages, agreements to borrow or lend money or to incur any kind of obligation of whatsoever nature on behalf of the venture without the express written consent of a majority in interest of the venturers.

The agreement also stated that Norton/Poole Investments, a company Norton was involved in, was entitled to up to six percent commission for the sale, lease or other disposition of the property. The agreement never names Norton as manager or trustee of the property. On May 1, 1986, Norton and his wife, Josephine Norton, named as grantors on the property, used the property as collateral and took out a $150,000 loan from Trinity Valley Savings and Loan Association (Trinity). On August 14, 1986, Norton and his wife, as grantors, again used the property as collateral and took out a $50,000 loan from Trinity. On September 17, 1987, Norton and his wife, as grantors, assigned to Trinity their rights to collect on leases on the property.

The Brazoria 17 Joint Venture acquired 17 acres in Brazoria County for $97,625 from Norton in 1976. GSC contends this constituted a "flip" of the property to which Norton benefitted because he was the owner of the property at the time and sold it to the joint venture for a profit. The joint venture agreement named Norton as the trustee and stated that he would be entitled to a broker's commission of up to six percent upon a sale, lease or other disposition of the property. The agreement provided that the property shall be held in the name of the trustee. The agreement stated that no venturer could sell, transfer, assign or mortgage the property without approval by the other venturers. On November 6, 1984, Norton assigned the Brazoria 17 property to the Westside National Bank for a $104,000 loan. There is an indica-

tion in the November loan agreement that 10 acres of the property already had a lien on it for $43,220.32. On December 8, 1986, Norton assigned 6.889 acres of the property to the Westside National Bank to obtain a loan for $43,500. Also on December 8, 1986, Norton assigned 9.445 acres of the land to obtain a $43,500 loan.

The Spring Cypress Joint Venture purchased 42 acres in Harris County in 1981.[4] The agreement named Norton as the managing agent and stated that the manager had the right to take reasonable action in connection with the property. The agreement stated that no acquisition, sale, mortgaging, refinancing of mortgages, placing of new mortgages or leasing could be done without the agreement of a majority of the other joint venturers. The agreement also names Norton as the exclusive agent of the joint venture, entitled to a real estate broker's commission of six percent of the sales price in any sale, trade or lease.[5] On September 12, 1987, Norton, as record owner of the property, assigned payments from a $1,801,591 promissory note to the First Bank of Houston to obtain a loan for $59,000. There is some evidence in the record that Norton may have received a $25,000 commission owed upon the sale of this property when the sale concluded.

The specific acts of Norton for which GSC contends it can claim reimbursement from the Fund are:

(1) In 1975 and 1976, Norton put title to the Brazoria 328 and Brazoria 17 properties in his own name. In 1976, Norton sold the Brazoria 17 property to the joint venture, the "flip."

(2) In 1986, Norton collateralized the Brazoria 328 property to obtain two loans. In 1987, he assigned the Brazoria 328 property to Trinity. In 1984, Norton assigned the Brazoria 17 property for a $104,000 loan. In 1986, Norton assigned two sections of the Brazoria 17 property for two loans of $43,500. In 1987, Norton assigned a $1.8 million promissory note involving

---

4. The price paid for the land was not in the record.

5. This commission was in addition to the 10 percent he was to receive as manager.

the Spring Cypress property to obtain a $59,000 loan.

(3) In 1975 and 1976, Norton received undisclosed commissions upon the purchase of the joint venture properties, and Norton received a $25,000 commission on the sale of the Spring Cypress property.

(4) Norton not accounting for joint venture money or disclosing proceeds from loans into a custodial account.

### 3.

### Requirements for Recovery Under the Fund

The Act states:.

Sec. 8. (a) The commission shall establish a real estate recovery fund which shall be set apart and maintained by the commission as provided in this section. The fund shall be used in the manner provided in this section for reimbursing aggrieved persons who suffer actual damages by reason of certain acts committed by a duly licensed real estate broker or salesman, or by an unlicensed employee or agent of a broker or salesman, provided the broker or salesman was licensed by the State of Texas at the time the act was committed and provided recovery is ordered by a court of competent jurisdiction against the broker or salesman. The use of the fund as provided in Part 1 of this section is limited to an act that constitutes a violation of Section 15(a)(3) or (6) of this Act.

TEX.REV.CIV.STAT. art. 6573a, § 8(a) (Vernon Supp.1995).

The subparts of section 15(a) of the Act that GSC contends Norton violated are:

(3) the licensee, when selling, buying, trading, or renting real property in his own name, engaged in misrepresentation or dishonest or fraudulent action; ...

(6) the licensee, while performing an act constituting a broker or salesman, as defined by this Act, has been guilty of:

.    .    .    .    .

(B) making a false promise of a character likely to influence, persuade, or induce any person to enter into a contract or agreement when the licensee could not or did not intend to keep such promise; ...

(D) failing to make clear, to all parties to a transaction, which party he is acting for, or receiving compensation from more than one party except with the full knowledge and consent of all parties;

(E) failing within a reasonable time properly to account for or remit money coming into his possession which belongs to others, or commingling money belonging to others with his own funds; ...

(H) accepting, receiving, or charging an undisclosed commission, rebate, or direct profit on expenditures made for a principal; ...

(J) acting in the dual capacity of broker and undisclosed principal in a transaction; ...

(Q) having knowingly withheld from or inserted in a statement of account or invoice, a statement that made it inaccurate in a material particular; ...

(V) conduct which constitutes dishonest dealings, bad faith, or untrustworthiness; ...

(Y) failing within a reasonable time to deposit money received as escrow agent in a real estate transaction, either in trust with a title company authorized to do business in this state, or in a custodial, trust, or escrow account maintained for that purpose in a banking institution authorized to do business in this state.

TEX.REV.CIV.STAT. art. 6573a, § 15(a)(3), (6) (Vernon Supp.1995).[6]

6. Although not raised by the parties, we note that the provisions of the Act changed during the years about which GSC complains. The Act was amended in 1983, and in the process, the Legislature mistakenly eliminated the reference in section 8 to the subsection in section 15 that contained the laundry list of violations. Under the 1983 version of the Act, section 8, part 1 stated that recovery from the Fund was limited to violations of sections 15(3) and 15(4). Section 15(a)(4), which in earlier versions of the Act had contained the laundry list of violations, no longer contained it; the laundry list of violations was renumbered as section 15(a)(6). Section 15(4) contained a provision not related to misdeeds of the licensee in relationship to a person who might have a claim against the Fund. The Legislature

The main issue under the points of error regarding the sufficiency of the evidence is whether Norton was acting as a real estate broker and whether his activities fall under the Act. The Act states:

Sec. 2. As used in this Act:

"Real estate broker" means a person who, *for another person* and for a fee, commission or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other valuable consideration from another person: (A) sells, exchanges, purchases, rents, or leases real estate; (B) offers to sell, exchange, purchase, rent, or lease real estate; (C) negotiates or attempts to negotiate the listing, sale, exchange, purchase, rental, or leasing of real estate; (D) lists or offers or attempts or agrees to list real estate for sale, rental, lease, exchange, or trade; (E) appraises or offers or attempts or agrees to appraise real estate; (F) auctions, or offers or attempts or agrees to auction, real estate; (G) buys or sells or offers to buy or sell, or otherwise deals in options on real estate; (H) aids, attempts, or offers to aid in locating or obtaining for purchase, rent, or lease any real estate; (I) procures or assists in the procuring of prospects for the purpose of effecting the sale, exchange, lease, or rental of real estate; or (J) procures or assists in the procuring of properties for the purpose of effecting the sale, exchange, lease, or rental of real estate.

(3) "Broker" also includes a person employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a salary, fee, commission, or any other valuable consideration, to sell the real estate or any part thereof, in lots or parcels or other disposition thereof.....

TEX.REV.CIV.STAT. art. 6573a § 2(2),(3) (Vernon Supp.1995).

---

should have provided in section 8, part 1 that recovery from the Fund was limited to violations of sections 15(a)(3) and 15(a)(6), not 15(a)(4).

The effect of the elimination of the laundry list of violations between the years 1983–1987 is

**4.**

**Evaluation of the Evidence**

We analyze each action complained of and whether it falls under the Act.

**a. Title to the property in Norton's name**

■ In points of error three and four, GSC contends Norton violated section 15(a)(3) and 15(a)(6)(B) of the Act by dealing with the Brazoria 17 and Brazoria 328 properties using his own name, as trustee. The Commission disagrees with GSC and cites a Fort Worth Court of Appeals case with facts similar to this case. *Heald v. Texas Real Estate Recovery Fund*, 669 S.W.2d 179 (Tex. App.—Fort Worth 1984, no writ).

In *Heald*, a broker entered into a partnership agreement with Heald. *Heald*, 669 S.W.2d at 180. The partnership's purpose was to buy and sell real properties, with title in both partners' names, and profits were to be divided equally. *Id.* The broker purchased several properties with Heald's money, but instead of taking the properties in their joint names, she put them in her own name. *Id.* When the properties were sold, the broker kept the proceeds from the sales. *Id.* After Heald secured a judgment against the broker, she attempted to collect from the Fund. The Fort Worth Court of Appeals affirmed the denial of recovery from the Fund, holding the broker acted in her individual capacity as a partner and did not act as a broker. *Id.* at 181. The court reasoned that because the broker's activities did not require a license, the broker's actions did not fall under the Act.

GSC contends the *Heald* case is distinguishable from this case. The Act in effect at the time involved in the *Heald* case required that the damages for which the claimant sought reimbursement from the Fund, must have been performed by the real estate licensee "in the scope of activity which consti-

---

that the only violations for which a claimant could seek reimbursement during those years was the one listed in § 15(a)(3), that the licensee engaged in dishonest action when selling, buying, trading, or renting real property in his own name.

tutes a broker or salesman" as defined by the Act. *Heald,* 669 S.W.2d at 181.[7]

GSC argues that in this case, Norton had an express commission agreement to be paid as a real estate broker, while in *Heald,* there was no commission agreement. GSC overlooks the fact that the acts about which it complains occurred while Norton acted as a principal, not as a real estate agent. The Act defines a real estate broker as a person who, *"for another person,"* sells, exchanges, purchases, rents or leases real estate. Gamble testified that Norton managed the Brazoria 17 and Brazoria 328 properties. We apply the reasoning in *Heald* and find that Norton was acting as a co-adventurer and not "for another person" when he committed the acts GSC accused him of committing. Thus, GSC was not entitled to reimbursement from the Fund when Norton put title to the properties in his own name.

### b. Use of the property as collateral

■ In points of error one through five, GSC argues that Norton encumbered the joint venture properties with personal loans and did not disclose the loans to the other joint venturers or account for the money. GSC contends that section 15(a)(3) does not require that the acts complained about be performed in any broker capacity because the acts were committed in the name of the offending person for his own individual benefit. GSC also contends Norton violated §§ 15(a)(6)(J), 15(a)(6)(Q), 15(a)(6)(V), 15(a)(6)(Y).

A real estate broker is usually understood to be one who is engaged by others, on a commission, to negotiate contracts involving real estate. *Janes v. CPR Corp.,* 623 S.W.2d 733, 740 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *see also Xarin Real Estate, Inc. v. Gamboa,* 715 S.W.2d 80, 84 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). Section 2(2) of the Act defines a real estate broker as someone who acts "for another person." *Xarin Real Estate,* 715 S.W.2d at

84. Section 2(3) provides that a broker includes a person who is employed "by or on behalf of the owner" of real estate. Section 4 defines a broker as a person acting "for another." *Xarin,* 715 S.W.2d at 83. Before a person is considered a broker under the Act, the person must act for another person in a real estate transaction. *Id.* at 84.

This Court has held that Act does not apply to joint adventurers and transactions between joint adventurers. *Gill,* 233 S.W.2d at 227; *see also Heald,* 669 S.W.2d at 181; *Mummert v. Stekoll Drilling Co.,* 352 S.W.2d 526, 527 (Tex.App.—Dallas 1961, writ ref'd n.r.e.).

We hold that Norton did not act "for another" when he used the joint venture properties as collateral for loans. Norton testified he used the loan money to pay for the partnerships' obligations. Norton acted for himself and as a partner. We find GSC cannot claim a recovery from the Fund for Norton's actions.

### c. Undisclosed commissions

■ In points of error one through five, GSC contends Norton violated sections 15(a)(6)(B), 15(a)(6)(D), 15(a)(6)(E), and 15(a)(6)(H) by taking an undisclosed commission upon the purchase of the Brazoria 17 property and the $25,000 commission on the Spring Cypress property.

Regarding the undisclosed commissions, GSC did not produce evidence at the hearing on its verified complaint about them. The only evidence GSC produced that Norton took undisclosed commissions on the properties was presented at the motion for new trial hearing. We consider only the evidence before the trial court at the time of the hearing regarding recovery from the Fund. TEX. R.APP.P. 52(a). GSC waived the issue by not presenting evidence at that hearing.

Regarding the $25,000 commissions on the Spring Cypress property, Norton took it in his capacity as real estate agent under the

---

7. The specific language quoted in the *Heald* opinion was deleted by an amendment to the Act, effective on August 29, 1993. *Heald,* 669 S.W.2d at 181. Now, in the present Act, section 15(a)(6) provides that a claimant can seek reimbursement from the Fund for damage caused by a real estate licensee "while [the licensee was] performing an act constituting an act of a broker or salesman," as defined by the Act.

terms of the contract. This did not violate the Act.

## Conclusion

In this case, the evidence supports the trial court's findings that Norton acted as a principal, not as an agent. Norton took title to the joint venture properties in his own name instead of the partnership's. He collateralized the properties to obtain loans, and he did so in his capacity as a partner, not as a broker. His actions do not fall under the Act. Accordingly, we overrule GSC's points of error one through five.