**In Cause No. 14-12-00104-CV Reversed and Rendered, In Cause No. 14-12-00170-CV Affirmed, and Opinion filed November 26, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00104-CV

---

**FLUTOBO, INC. D/B/A KELLER WILLIAMS REALTY NORTHEAST, Appellant**

**V.**

**SHAWN HOLLOWAY AND STEPHANIE HOLLOWAY, Appellees**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-43155**

---

## NO. 14-12-00170-CV

---

**SHAWN HOLLOWAY AND STEPHANIE HOLLOWAY, Appellants**

**V.**

**JUDY HOPKINS, Appellee**

# O P I N I O N

In this case we examine a real estate company's liability to buyers in the context of the sale of a home owned by one of the company's salespersons in a transaction in which the company was both the buyer's agent and the seller's agent. After the sale, the buyers of the home discovered termite damage and sued the termite inspector, the seller, the real estate company, and the real estate broker designated by the company as the company's agent for purposes of the Texas Real Estate License Act. The buyers settled their claims against the inspector. The trial court severed the claims against the seller after she filed for bankruptcy protection. The trial court granted summary judgment in favor of the real estate broker and severed these claims to make the judgment final. The claims against the real estate company were tried to a jury, which found liability and damages under various claims. In consolidated appeals, we conclude that the evidence is legally insufficient to support a finding that (1) the company is liable for the seller's conduct, (2) the company knew of any unrepaired termite damage before the Holloways' discovery of this damage; or (3) any remaining allegedly actionable conduct of the company caused the buyers damage. Accordingly, we reverse the trial court's judgment against the real estate company and render judgment that the buyers take nothing against the real estate company. Because the trial court did not err in granting summary judgment, we affirm the trial court's judgment in the severed case.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Shawn and Stephanie Holloway decided to move from their home in Summerwood to Kingwood in the Spring of 2009. To assist them in selling their home and purchasing a new one, they enlisted the help of Jeremy Williams (hereinafter "Williams"), a licensed real estate salesperson associated with Flutobo, Inc. d/b/a Keller Williams Realty Northeast, a licensed real estate broker (hereinafter "Keller Williams").[1] As to Williams's services regarding their efforts to purchase a house, the Holloways and Williams had an oral contract.

In April 2009, the Holloways were progressing towards closing on the sale of their home and purchasing a property in Kingwood (hereinafter "the River Falls House"). The Holloways entered into a contract to buy the River Falls House. Williams recommended two inspection companies for use in inspecting the River Falls House. The Holloways selected one of them, Clint Simon d/b/a Sherlock Pest & Sherlock Spec (hereinafter "Simon"), who performed both the home inspection and termite inspection on the River Falls House. After these inspections were performed, the Holloways decided not to buy the River Falls House and exercised their right to terminate the contract.

Around the same time as the Holloways were deciding not to buy the River Falls House, Williams learned that Jennifer Blalock, another licensed real estate salesperson associated with Keller Williams, was planning to sell the Kingwood house in which she lived.[2] Before Blalock listed her home for sale, she let Williams know that she was trying to sell her house. Williams sent the Holloways

---

[1] People often use the term "real estate agent" to refer to a licensed real estate salesperson or a licensed real estate broker who represents a buyer or a seller of real estate. In this opinion, we use the terms "broker" and "salesperson," which correspond to the terminology used in applicable statutes. *See* Tex. Occ. Code Ann. 1101.002(1),(7) (West 2013).

[2] At the time of the occurrence made the basis of this suit her name was Jennifer Blalock. Her name is now Jennifer Snyder.

an email with information about the house Blalock wanted to sell (hereinafter the "Property"). Two days later, Williams showed the Property to the Holloways with Blalock present. The Holloways decided they were interested in the Property and wanted to make an offer to buy it. According to Shawn Holloway, Williams told them while they were looking at the Property that if the Holloways liked the Property they needed to act "pretty quickly" and that Blalock had told Williams that she had "three or four people already lined up to see the house."

Because Keller Williams had a policy that a real estate salesperson associated with Keller Williams could not serve as the salesperson associated with Keller Williams on the listing of the salesperson's own house for sale, in documents related to this transaction, Tina Martin, a real estate salesperson associated with Keller Williams, was designated as the salesperson associated with the listing broker, Keller Williams. Williams sent the Holloways an "Intermediary Relationship Notice" confirming that Keller Williams was serving as both the buyer's agent for the Holloways and the seller's agent for Blalock. According to this notice, Keller Williams appointed Martin as the salesperson to communicate with Blalock, carry out Blalock's instructions, and provide opinions and advice to Blalock during negotiations, and Keller Williams appointed Williams as the salesperson to perform the same services for the Holloways. Nonetheless, Williams testified that he negotiated directly with Blalock and that he communicated with Martin "very little" regarding this transaction.

Blalock provided the Holloways with a "Seller's Disclosure Notice," in which Blalock stated that she was not aware of (1) active infestation of termites or other wood destroying insects, (2) previous termite or wood-destroying-insect "damage repaired," or (3) termite or wood-destroying-insect damage needing repair. Blalock disclosed that she was aware of previous treatment for termites or wood destroying insects. The Holloways soon entered into a contract for sale of

4

the Property. The contract reflected that Keller Williams was a broker serving as both buyer's agent and seller's agent, that the salesperson associated with Keller Williams regarding the Holloways was Williams, and that the salesperson associated with Keller Williams regarding Blalock was Martin. The Holloways had a ten-day period during which they could terminate the contract, thus allowing them time to inspect the Property.

The Holloways hired Simon to perform both the home inspection and the termite inspection of the Property. Simon had a scheduling problem and did not perform the home inspection, but he did perform the termite inspection. Before Simon performed the inspection, Shawn Holloway instructed Williams to give Simon a copy of Blalock's Seller's Disclosure Notice. Williams did not do so. In his report, Simon stated that his inspection revealed no visible evidence of an active infestation or a previous infestation of termites or wood destroying insects in or on the structure. Simon also stated that his inspection revealed visible evidence in or on the structure of previous treatment for subterranean termites, but not such evidence of previous treatment for other types of termites or wood destroying insects.

The Holloways did not exercise their option to terminate the contract and closed on the purchase of the Property. Neither Keller Williams nor Martin received any commission regarding Martin's services for Blalock. Keller Williams and Williams received a commission regarding Williams's services for the Holloways. Soon after the closing, the Holloways hired contractors to start some renovations to the Property. The contractors discovered extensive termite damage, substantial enough to cause the Holloways to move out of the newly purchased home.

The Holloways filed suit asserting various claims against Blalock, Simon,

and Keller Williams. The Holloways filed a separate lawsuit in which they asserted various claims against Judy Hopkins, the real estate broker designated by Keller Williams as its agent for purposes of the Texas Real Estate License Act. This lawsuit was consolidated in the trial court with the Holloways' lawsuit against Blalock, Simon, and Keller Williams. During discovery, Keller Williams produced a Seller's Disclosure Notice from the sale of the Property to Blalock (hereinafter the "Mackey Disclosure"); the person at Keller Williams who was involved in that sale was not involved in the Holloways' purchase of the Property from Blalock. In the Mackey Disclosure, the previous owners disclosed to Blalock that they were aware of previous treatment for termites or other wood-destroying insects and of previous damage repaired. The previous owners stated that termite treatment had been done before 1993 and that treatment and small repairs were done in approximately 1995. The prior owners stated that they were not aware of any active infestation or damage needing repair.

Before trial the Holloways settled their claims against Simon for $200,000. The trial court severed the claims against Blalock after she filed for bankruptcy protection. The trial court granted summary judgment in favor of Hopkins and severed these claims to make the judgment final. In the trial of the claims against Keller Williams, the jury found liability against Keller Williams based on claims for breach of contract, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices Consumer Protection Action ("DTPA"), common-law fraud, and statutory fraud. In response to Question 11, the jury made actual damage findings as to all of the Holloways' claims. In response to Question 12, the jury made findings regarding mental anguish damages as to the Holloways' DTPA claims. After a bench trial regarding attorney's fees, the trial court rendered judgment based upon the jury's verdict and its attorney's fees findings. The Holloways elected to recover based upon their breach-of-contract claim. The trial court

6

rendered judgment awarding the Holloways' actual damages, prejudgment interest, and trial and appellate attorney's fees.

Keller Williams has appealed from the adverse judgment, and the Holloways have appealed from the trial court's summary judgment in favor of Hopkins in the severed case. We have consolidated these appeals and address both in this opinion.[3]

## II.    ISSUES PRESENTED ON APPEAL

On appeal, Keller Williams argues that the evidence is legally and factually insufficient to support several jury findings regarding the Holloways' breach-of-contract claim, including the finding that Keller Williams's breach of contract proximately caused damage to the Holloways. Keller Williams also challenges the other claims that were not made a basis of the trial court's judgment but that might be elected as a basis for recovery under the *Boyce Iron Works* case.[4]  *See Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.*, 747 S.W.2d 785, 787 (Tex. 1988) ("When the jury returns favorable findings on two or more alternative theories, the prevailing party need not formally waive the alternative findings. That party may seek recovery under an alternative theory if the judgment is reversed on appeal"). Keller Williams asserts that the evidence is legally insufficient to

---

[3] In Cause No. 14-12-00104-CV, Keller Williams is the appellant/defendant and the Holloways are the appellees/plaintiffs. In Cause No. 14-12-00170-CV, the Holloways are the appellants/plaintiffs and Hopkins is the appellee/defendant.

[4] If, on original submission, a plaintiff bringing an appeal briefs issues relating to the plaintiff's election of alternative theories of recovery under the *Boyce Iron Works* case, this court may address these issues on original submission. *See Hatfield v. Solomon*, 316 S.W.3d 50, 60 n.3 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that a *Boyce Iron Works* election of alternative theory of recovery may be addressed on original submission if briefed by the parties). The parties have briefed issues regarding the Holloways' other claims, and we have decided to address these issues on original submission. *See Hatfield*, 316 S.W.3d at 60 n.3.

support the jury's finding that the company's actionable conduct proximately caused the Holloways' damages. Keller Williams asserts various legal and factual insufficiency challenges to the jury findings regarding the Holloways' claims. Keller Williams also asserts other issues in which it challenges the trial court's failure to apply a settlement credit, several of the actual damage awards, and the trial court's award of attorney's fees.

In their appeal, the Holloways assert that the trial court erred in granting summary judgment because Hopkins did not establish that as a matter of law she has no liability for the acts of Williams, Blalock, or Keller Williams and because the Holloways raised fact issues regarding their claims against Hopkins.

## III. STANDARDS OF REVIEW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment

8

evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## IV. ANALYSIS

In analyzing Keller Williams's appeal, we first address whether any actionable conduct by Blalock provides a basis for affirming the trial court's judgment against Keller Williams. Then, we determine whether the evidence is legally sufficient to support a finding that Keller Williams knew of the unrepaired termite damage on the Property before the Holloways' discovery of this damage. Having concluded that the answer to these questions is no, we finally address whether the evidence is legally sufficient to support the jury's findings that the Holloways' damages were caused by Keller Williams's allegedly actionable conduct, except for any alleged liability for Blalock's conduct and any alleged liability based upon Keller Williams's knowledge of the unrepaired termite damage on the Property before the Holloways' discovery of this damage.

9

In analyzing the Holloways' appeal, we first address whether Hopkins's status as designated agent for Keller Williams as to its broker's license makes her vicariously liable for any actionable conduct of Keller Williams's salespersons or for the conduct of any agent of Keller Williams. We then address whether the Holloways have adequately briefed the remaining appellate issues.

## A. Is Keller Williams liable for Blalock's conduct?

In the jury charge, the trial court submitted questions about Keller Williams, Blalock, and Simon separately. The trial court did not ask any separate questions regarding Williams or Martin. Nor did the trial court ask the jury to make any finding as to whether Keller Williams was liable for Blalock's conduct. Keller Williams argues that, because the jury made no such finding, Keller Williams may not be held liable for Blalock's conduct. We presume, without deciding, that (1) whether Keller Williams was liable for Blalock's conduct was an element of the Holloways' claims against Keller Williams; (2) there was no objection to the omission from the jury charge of a question on this issue; (3) no written finding was made by the trial court on that element; and (4) there is a deemed finding of this omitted element in such a manner as to support the trial court's judgment. *See Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228–29 (Tex. 2011). But, even under this four-part presumption, for Keller Williams to be liable for Blalock's conduct, there must be legally sufficient evidence to support such a deemed finding. *See id.*; *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 648 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Under the unambiguous language of Blalock's Independent Contractor Agreement with Keller Williams, which was admitted into evidence at trial, Keller Williams engaged Blalock as an independent contractor to perform services as a real estate salesperson. Absent actual or apparent authority, an agent cannot bind a

10

principal. *Huynh v. Nguyen*, 180 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). We presume for the sake of argument that the jury found that Blalock's acts and omissions regarding the Property bound Keller Williams under either actual authority or apparent authority. Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Id*. at 622–23. Actual authority denotes authority that the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess. *Id*. at 623. In determining whether apparent authority exists, the acts of the principal are examined to ascertain whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Id*. Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Id*. Furthermore, the principal either must have taken affirmative action to hold the agent out as possessing the authority or the principal knowingly and voluntarily must have permitted the agent to act in an unauthorized manner. *Id*.

In the Real Estate License Act, the Texas Legislature defines a "broker" in pertinent part as "a person who, in exchange for a commission or other valuable consideration or with the expectation of receiving a commission or other valuable consideration, performs *for another person* one of the following acts: (i) sells, exchanges, purchases, or leases real estate; (ii) offers to sell, exchange, purchase, or lease real estate; (iii) negotiates or attempts to negotiate the listing, sale, exchange, purchase, or lease of real estate; (iv) lists or offers, attempts, or agrees to list real estate for sale, lease, or exchange . . . ." Tex. Occ. Code Ann. 1101.002(1) (emphasis added). The Texas Legislature defines a "salesperson" as "a person who

11

is associated with a licensed broker for the purpose of performing an act described by [section 1101.002(1) of the Texas Occupations Code]." It is undisputed that Keller Williams, at all material times, was a licensed broker and that Blalock, at all material times, was a licensed real estate salesperson associated with Keller Williams for the purpose of performing acts described by section 1101.002(1) of the Texas Occupations Code. *See* Tex. Occ. Code Ann. 1101.002.

But, owners of real property in Texas can sell their own property without being a licensed real estate broker. *See id*. §§1101.002, 1101.004, 1101.351. A person acts as a real estate broker if the person performs one or more specified services for another person. *See Gamble v. Norton*, 893 S.W.2d 129, 137 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Xarin Real Estate, Inc. v. Gamboa*, 715 S.W.2d 80, 84–85 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). Acts performed regarding the sale of one's own property are not acts described by section 1101.002(1) of the Texas Occupations Code. *See* Tex. Occ. Code Ann. § 1101.002(1),(7); *Gamble*, 893 S.W.2d at 137; *Xarin Real Estate, Inc.*, 715 S.W.2d at 84–85. Thus, a real estate salesperson does not associate with a licensed real estate broker for the purpose of performing such acts regarding the salesperson's own property. *See* Tex. Occ. Code Ann. § 1101.002(1),(7); *Gamble*, 893 S.W.2d at 137; *Xarin Real Estate, Inc.*, 715 S.W.2d at 84–85.

Under the unambiguous language of Blalock's Independent Contractor Agreement, Keller Williams engaged Blalock as an independent contractor to perform services as a real estate salesperson. All of the documents regarding Blalock's sale of the Property to the Holloways reflect that Blalock is the owner of the Property; they do not reflect that she is acting as a real estate salesperson or broker on behalf of the seller. Keller Williams was the broker for both Blalock as the seller and the Holloways as the buyers. Keller Williams appointed Williams as

12

the salesperson associated with Keller Williams regarding the services for the Holloways and Martin as the salesperson associated with Keller Williams regarding the services for Blalock.

There was evidence at trial that Williams negotiated directly with Blalock and that he communicated with Martin "very little" regarding this transaction. The Holloways argue that, although Martin was shown as Blalock's listing agent and the salesperson appointed by Keller Williams to provide services to Blalock as the seller, Blalock effectively represented herself in the transaction. Presuming that Blalock offered the Property for sale, negotiated the sale of the Property, and sold the Property for herself, she did not do so "for another person." *See* Tex. Occ. Code Ann. § 1101.002. Therefore, Blalock's acts in doing so are not those of a real estate salesperson for the seller and were not within the scope of Blalock's agreement with Keller Williams.[5]

The Holloways emphasize the testimony of Judy Hopkins, the broker designated by Keller Williams as its agent for purposes of the Texas Real Estate License Act and one of the shareholders of Keller Williams. According to the Holloways, in this testimony, Hopkins agreed that Keller Williams authorized all of Blalock's conduct and all of this conduct was within the scope of her work as a salesperson associated with Keller Williams. The Holloways assert that Hopkins's testimony raises a fact issue as to whether Keller Williams is responsible for Blalock's conduct.

---

[5] The Holloways assert that Keller Williams is liable for Blalock's conduct under section 1101.803 of the Texas Occupations Code, which states that "[a] licensed broker is liable to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker or by a salesperson associated with or acting for the broker." Tex. Occ. Code Ann. § 1101.002 (West 2013). But, as to a salesperson's conduct, this statute is limited in scope to conduct engaged in under Chapter 1101 by a salesperson associated with or acting for the broker. *See id.*

13

Hopkins testified in pertinent part that (1) Keller Williams is responsible for everything Williams does while Williams is wearing his "real estate hat" and performing acts authorized by Keller Williams; (2) Blalock was authorized to give a "pocket listing" to Williams to pass on to the Holloways; (3) Blalock was not authorized to sell her home acting as the listing agent; (4) Blalock was authorized to sell her home as the seller; (5) Keller Williams has a policy that Keller Williams salespersons cannot sell their own homes through Keller Williams without a person other than the owner serving as the salesperson associated with the listing agent; (6) this policy did not prohibit salespersons from acting as sellers of their own property; (7) Blalock did not perform any acts that were not authorized by Keller Williams; she was allowed to sell her home; (8) as far as Hopkins knows, everything Blalock did she was authorized to do by Keller Williams; and (9) no person from Keller Williams was going to testify at trial that Blalock's acts were not authorized by Keller Williams. In context, we conclude that under the familiar legal-sufficiency standard of review, this evidence would not enable reasonable and fair-minded people to find that Blalock's acts were within the scope of her service as a Keller Williams salesperson. Rather, in this testimony, Hopkins indicated that, according to a policy of Keller Williams, Blalock could not serve as the salesperson associated with Keller Williams as listing agent, and that, despite this policy, Blalock was allowed to sell her own property with Keller Williams as the listing agent and seller's agent. It is not reasonable to find that this testimony shows that Blalock's actions in selling the Property were undertaken as a Keller Williams salesperson. Hopkins testified that Keller Williams authorized Blalock to sell her own property through Keller Williams, not that Keller Williams authorized Blalock to work as a Keller Williams salesperson on this transaction.

The Holloways also assert that Keller Williams is liable for Blalock's

conduct under two regulations from the Texas Administrative Code. *See* 22 Tex. Admin. Code § 535.2(a) (2003) ("[A] broker is responsible for the authorized acts of the broker's salespersons, but the broker is not required to supervise the salespersons directly. If a broker permits a sponsored salesperson to conduct activities beyond the scope explicitly authorized by the broker, those too will be deemed to be authorized acts for which the broker is responsible."); 22 Tex. Admin. Code § 535.141(c) (2008) ("[a] real estate broker is responsible for all acts and conduct performed by a real estate salesperson associated with or acting for the broker."). One regulation is in a subchapter entitled "General Provisions Relating to the Requirements of Licensure," and the other regulation is in a subchapter entitled "Suspension and Revocation of Licensure." *See* 22 Tex. Admin. Code § 535.2(a); 22 Tex. Admin. Code § 535.141(c).

As explained above, there is legally insufficient evidence that Blalock was acting as a salesperson in this transaction. Yet, even if these regulations could be interpreted to cover her acts as an owner, the parties have not cited and research has not revealed any cases addressing whether these regulations provide legal standards that apply in claims by private plaintiffs seeking monetary damages. If these regulations provided a standard for such claims, that standard would conflict with applicable precedent regarding actual and apparent authority. *See Gaines v. Kelly*, 235 S.W.3d 179, 182–85 (Tex. 2007). For violations of these regulations, the Texas Real Estate Commission may suspend or revoke a license, assess administrative penalties, or take other disciplinary action. *See* 22 Tex. Admin. Code § 535.191. The mere fact that an administrative agency promulgates a rule or regulation does not require the courts to accept it as a standard for civil liability. *See Hicks v. Humble Oil & Refining Co.*, 970 S.W.2d 90, 94 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Courts in civil cases must decide whether to adopt

15

an administrative rule or regulation as a standard for determining civil liability. *See id*. at 94–95. We decline to adopt the standards in these administrative regulations for use in determining the civil liability of litigants in damage claims.

After reviewing all of the trial evidence under the applicable standard of review, we conclude that the trial evidence is legally insufficient to support a finding of conduct by Keller Williams that would make Blalock's knowledge, acts, or omissions binding on Keller Williams based on either actual authority or apparent authority. *See Gaines*, 235 S.W.3d at 182–85; *Huynh*, 180 S.W.3d at 622–23. Likewise, we conclude the evidence is legally insufficient to support a finding that Blalock's conduct was within the scope of her work as a Keller Williams salesperson or that Keller Williams is liable for Blalock's conduct. *See Gaines*, 235 S.W.3d at 182–85; *Huynh*, 180 S.W.3d at 622–23. Accordingly, any actionable conduct by Blalock does not provide a basis for affirming the trial court's judgment against Keller Williams. *See Service Corp. Int'l*, 348 S.W.3d at 229–31; *Huynh*, 180 S.W.3d at 622–23.

**B.      Is the evidence legally sufficient to support a finding that Keller Williams knew of the unrepaired termite damage on the Property?**

The Holloways do not assert on appeal that Williams or Martin—the Keller Williams salespersons for this transaction—knew of the unrepaired termite damage on the Property before the Holloways' discovery of this damage. In the Mackey Disclosure, the previous owners revealed to Blalock that they were aware of previous treatment for termites or other wood-destroying insects and of previous damage repaired. The previous owners stated that termite treatment had been done before 1993 and that treatment and small repairs were done in approximately 1995. The  previous owners stated that they were not aware of any active infestation or any damage needing repair. Even if Williams or Martin had been aware of the

Mackey Disclosure, or even if Keller Williams itself were charged with knowledge of the disclosure because the document was preserved in a file on a prior sale (an issue we need not decide), that disclosure did not state that there was any existing termite damage on the Property in 2002 (when Blalock bought the Property), or in 2009 (when she sold it to the Holloways).[6]

As to Williams, Martin, and any other Keller Williams broker or salesperson involved in that capacity in the sale to the Holloways, after reviewing the trial evidence under the applicable standard of review, we conclude that the evidence is legally insufficient to support a finding that any of these people knew of the unrepaired termite damage in the house on the Property before the Holloways' discovery of this damage. *See Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 889–91 (Tex. App.—Dallas 1988, no writ). Thus, the evidence is legally insufficient to support a finding that Keller Williams knew of the unrepaired termite damage on the Property before the Holloways' discovery of this damage. *See id.*

**C.   Is the evidence legally sufficient to support the jury's findings that the Holloways' damages were caused by the remaining actionable conduct of Keller Williams?**

Except for Question 12 regarding mental anguish damages for the DTPA claim, the trial court submitted a single actual damages question (Question 11) for all of the Holloways' claims that were submitted to the jury. In Question 11, the trial court asked the jury what sum of money, if paid now in cash, would fairly and

---

[6] Keller Williams and amici curiae Texas Association of Realtors and Houston Association of Realtors assert that Keller Williams had no duty to make known to the Holloways the Mackey Disclosure because no Keller Williams broker or sales representatives involved in this transaction knew of the existence of the Mackey Disclosure. We need not and do not address this issue, nor do we decide whether, as to the Holloways' claims, Keller Williams is charged with knowledge of the Mackey Disclosure.

reasonably compensate the Holloways for their damages, if any, that were proximately caused by the conduct found by the jury in its responses to the liability questions. The trial court instructed the jury as follows:

> "Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

At the charge conference, no party objected to the form of this damages question. Therefore, this court measures the sufficiency of the evidence using the charge given, regardless of whether the charge accurately reflects Texas law. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards). All of the elements of damages submitted in Question 11 are based on damages the Holloways sustained as a result of their purchase of the Property with termite damage.

In response to Question 12 the jury found the amount of money that would fairly and reasonably compensate the Holloways for their past and future mental anguish that resulted from Keller Williams's allegedly actionable conduct. At the charge conference, no party voiced any objection to the form of this damages question. Thus, we measure the sufficiency of the evidence according to the

18

charge the trial court gave, regardless of whether that charge is a fair reflection of Texas law. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86. The testimony regarding the Holloways' mental anguish is based upon the mental anguish they suffered as a result of buying the Property with termite damage.

We presume, without deciding, that, except for the bases for liability addressed in subsections A and B, above, the actionable conduct of Keller Williams found by the jury is a basis for liability, and we focus on the evidence that this actionable conduct caused the Holloways the damages found by the jury, all of which are based upon the Holloways' purchase of the Property with termite damage.

The Holloways complain of Keller Williams's failure to make known to them the Mackey Disclosure from the 2002 sale of the Property to Blalock.[7] In the Mackey Disclosure, the previous owners revealed to Blalock that they were aware of previous treatment for termites or other wood-destroying insects and of previous damage repaired. The previous owners stated that they were not aware of any active infestation or any damage needing repair but that termite treatment had been done before 1993, and that treatment and small repairs were done in approximately 1995.

There is no evidence that the failure to give the Holloways the Mackey Disclosure caused their damages. The Mackey Disclosure reflects termite treatment and minor repairs of termite damage in 1995, fourteen years before the Holloways bought the house, as well as termite treatment before 1993. The record contains no trial evidence that the termite infestation that caused the damage

---

[7] As stated above, we need not and do not address whether Keller Williams had a duty to make known the Mackey Disclosure to the Holloways.

19

repaired in 1995 also caused the damage the Holloways discovered in 2009. Though Shawn Holloway testified he would have liked to have known the information in the Mackey Disclosure and that he would not have ignored the information in that disclosure, he did not testify that the Holloways would not have bought the Property had they been aware of this information. Nor did Stephanie Holloway provide any such testimony. On termite issues, the Holloways relied upon the work of Simon, who testified that he did not see any termite damage during his inspection of the Property and that knowledge of prior repairs for termite damage would not have affected the termite inspection he performed on the Property, though he would have mentioned the prior repairs in his report.

The Holloways also complain of Williams's alleged failure to follow a Keller Williams policy to provide the Holloways with the names of three different inspectors. Simon performed the home inspection and termite inspection for the Holloways regarding the River Falls House. The record contains evidence that the Holloways wanted Simon to perform the termite inspection on the Property, even though he had a scheduling conflict and Williams offered to provide the Holloways with the name of another inspector. Even if the jury did not credit this testimony, there was no trial evidence from which a reasonable jury could find that, if Williams had given the Holloways the names of two other inspectors along with Simon's name, the Holloways's purchase of the termite-damaged house would not have occurred.

The Holloways also asserted that (1) contrary to their instructions, Williams failed to forward Blalock's disclosure notice to Simon before Simon conducted the termite inspection; (2) Martin failed to provide services that normally would be provided by the salesperson associated with the listing agent or the seller's agent and thus there was one fewer "set of eyes" reviewing the transaction; (3) Williams

20

incorrectly indicated in the Intermediary Relationship Notice that Martin was the salesperson associated with Keller Williams who would be providing services to Blalock, when at the time Williams drafted this document, Martin had not signed the listing agreement; and (4) Williams falsely informed the Holloways that Blalock had told him there were three or four other potential buyers already waiting to see the Property. Presuming that Martin and Williams engaged in this conduct, there was no trial evidence from which a reasonable jury could find that, but for this conduct, the Holloways would not have purchased the termite-damaged house.

We presume, without deciding, that, except for the bases for liability addressed in subsections A and B, above, the allegedly actionable conduct of Keller Williams is a basis for liability. Even under this presumption, a review of the trial evidence under the applicable standard of review shows that the evidence is legally insufficient to support a finding that without this conduct, the Holloways would not have purchased the termite-damaged house. *See Voye v. Ragan*, 616 S.W.2d 673, 675 (Tex. Civ. App.—Corpus Christi 1981, no writ) (holding the evidence was legally insufficient to show that allegedly actionable conduct of real estate agents caused damages of buyers who bought building with termite damage). Thus, the evidence is legally insufficient to show causation as to the remaining actionable conduct of Keller Williams. *See id*.

For the foregoing reasons, the evidence is legally insufficient to support a recovery by the Holloways against Keller Williams on any of their claims that were submitted to the jury. Accordingly, in Cause No. 14-12-00104-CV, we reverse the trial court's judgment and render judgment that the Holloways take

21

nothing.[8]

**D.    Did the trial court err in granting Hopkins's motion for summary judgment?**

In the Holloways' appeal, they assert in two issues that the trial court erred in granting Hopkins's motion for traditional and no-evidence summary judgment. This appeal involves statutory-interpretation issues. We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

A corporate entity may be licensed as a real estate broker. *See* Tex. Occ. Code Ann. §§ 1101.002(1), 1101.355. For a corporate entity to act as a licensed broker, the entity must designate one of its managing officers as its agent for purposes of the Texas Real Estate License Act, and that officer must be a licensed broker in active status and good standing according to the commission's records. *See id.* § 1101.002(1), 1101.351, 1101.355. The summary-judgment evidence conclusively proves that Keller Williams, a corporation, is a licensed broker and that it has designated Hopkins, a licensed broker, as its agent for purposes of the

---

[8]We need not and do not address Keller Williams's various other appellate arguments.

22

Texas Real Estate License Act.

A licensed real estate salesperson must be associated with a licensed broker. *See id*. § 1101.002(7), 1101.351(c). The summary-judgment evidence proves as a matter of law that Williams, Blalock, and Martin all are licensed real estate salespersons who—to the extent they were acting as licensed real estate salespersons—were associated with licensed broker Keller Williams at all material times. The Holloways assert that Hopkins, as designated agent for Keller Williams as to its broker's license, is vicariously liable for the conduct of all of the salespersons associated with Keller Williams. The Holloways base this assertion on various grounds.

First, the Holloways point to two regulations from the Texas Administrative Code. *See* 22 Tex. Admin. Code § 535.2(a) (2003); 22 Tex. Admin. Code § 535.141(c) (2008). But, we already have concluded that these regulations do not create liability for brokers in claims by private litigants, so these regulations are not a basis for liability.[9]

The Holloways also rely upon section 1101.803 of the Texas Occupations Code, entitled "General Liability of Broker," which states that "[a] licensed broker is liable to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker or by a salesperson associated with or acting for the broker." Tex. Occ. Code Ann. § 1101.002 (West 2013). But, as to a salesperson's conduct, this statute is limited in scope to conduct engaged in under Chapter 1101 by a salesperson associated with or acting for the broker. *See id.* The summary-judgment evidence conclusively proves that at all material times

---

[9] In any event, these regulations address a "broker's salespersons," a "sponsored salesperson," and "a real estate salesperson associated with or acting for the broker." And, Williams, Blalock, and Martin are licensed real estate salespersons associated with and acting for Keller Williams. They are sponsored salespersons of Keller Williams, not of Hopkins.

when Williams, Blalock, and Martin were acting as licensed real estate salespersons, they were licensed real estate salespersons associated with and acting for Keller Williams, not for Hopkins.

The Holloways also rely upon expert testimony that a designated agent for a corporate broker as to its broker's license is vicariously liable for the conduct of all of the salespersons associated with the corporate broker. But, the testimony of an expert as to his opinion regarding the law is improper and does not bind the courts, nor does it preclude summary judgment under the proper legal standard, even if it is different from the standard espoused by the expert. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The Holloways argue that brokers and salespersons owe an "extraordinary fiduciary duty" to their clients, and therefore, the corporate veil should not protect Hopkins from liability. No case or statute cited by the Holloways supports the proposition that corporate veils should be ignored in all cases involving a broker's fiduciary duty. We decline to so hold.

We conclude that, as a matter of law, Hopkins's status as the broker designated by Keller Williams as its agent for purposes of the Texas Real Estate License Act does not make her vicariously liable for any actionable conduct of Keller Williams's salespersons or agents. To the extent that the Holloways seek to hold Hopkins vicariously liable for such conduct based upon this status (hereinafter "Designated Agent Theory"), the trial court did not err in granting summary judgment.

To the extent that the Holloways seek to hold Hopkins liable based upon a vicarious-liability theory other than the Designated Agent Theory or based upon direct liability for her own conduct, we conclude that the Holloways have not

adequately briefed these issues on appeal. In its no-evidence motion for summary judgment, Keller Williams attacked each of the essential elements of the Holloways' claims against Hopkins for negligence, negligent misrepresentation, common-law fraud, statutory fraud, breach of contract, breach of fiduciary duty, and DTPA violations. On appeal, the Holloways are required to attack each of these no-evidence grounds. In their appellants' brief, as to at least one element of each of their claims, they have failed to provide any argument, analysis, or citations showing how the summary-judgment evidence raised a fact issue on this element of the claim against Hopkins based upon direct liability for her own conduct or based upon a vicarious-liability theory other than the Designated Agent Theory. Even construing the Holloways' brief liberally, we cannot conclude they have adequately briefed these issues. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Thus, the trial court did not err in granting summary judgment as to the Holloways' claims against Hopkins based upon direct liability for her own conduct or based upon a vicarious-liability theory other than the Designated Agent Theory. *See Fish v. Marsters, Co*., No. 14-06-00129-CV, 2007 WL 1438555, at \*5 (Tex. App.—Houston [14th Dist.] May 17, 2007, pet. denied) (mem.op.) (affirming summary judgment regarding claims for which appellant failed to present argument attacking all of the independent summary-judgment grounds).[10]

---

[10] In any event, even if the Holloways had briefed all of these issues, we still would affirm the trial court's summary judgment.

In Cause No. 14-12-00170-CV, we overrule the Holloways' appellate issues and affirm the trial court's summary judgment in favor of Hopkins.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Kem Thompson Frost, Justice Jeffrey Brown, and Justice J. Brett Busby. (Justice Jeffrey Brown not participating).[11]

---

[11] After oral argument in this case but before the court issued this opinion, Justice Jeffrey Brown was appointed to the Supreme Court of Texas and is no longer a justice on the Fourteenth Court of Appeals. The remaining two justices have decided the case. *See* Tex. R. App. P. 41.1(b).